Dear Dr. Kyle:
You have requested an opinion of the Attorney General regarding contributions made by the Jefferson, Orleans and St. Tammany Parish School Boards to their respective Teacher's Health and Welfare Funds (Funds). You first ask whether such contributions are legally permissible under the Louisiana Constitution and Revised Statutes. If such contributions are legally permissible, you also ask whether the respective Funds are required to be audited pursuant to R.S. 24:513.
In answer to your first question, I direct your attention to Article VII, Section 14 of the Louisiana Constitution of 1974. Paragraph (A) generally prohibits the funds of the state or any of its political subdivisions (i.e., school boards) from being loaned, pledged or donated to or for any person, association or corporation, public or private. Paragraph (B) provides, in pertinent part, the following:
 (B) Authorized Uses.
 Nothing in this Section shall prevent (2) contributions of public funds to pension and insurance programs for the benefit of public employees.
The authority for the establishment of the Funds in question is found at R.S. 17:1224. It provides:
 § 1224. Alternative means of providing benefits
 A. In addition to an as an alternative to the authority granted by this Part or by any other provisions of law to provide for employee benefits, including but not limited to group insurance, benefits, or services for medical, dental, hospital, and nursing care and other compensation on account of sickness, disability, or death, or any other related benefits, parish or city school boards in parishes or cities having a population of over one hundred thirty-five thousand may establish a trust for these purposes and for the additional purpose of providing professional development programs and benefits for its employees, and may pay, out of monies appropriated and budgeted therefor, part or all of the costs, charges, or contributions necessary for the establishment and administration thereof, as may be determined by the provisions of the trust.
 B. With the establishment of the trust, the parish or city school board in parishes or cities having a population over one hundred thirty-five thousand shall be considered a person and/or employer in creating the trust for the benefit of employees.
 C. The trust shall provide for the actuarial soundness thereof and may provide for the method of determining the eligibility of participants, the schedule of benefits, procedures for making and paying claims, the use of group insurance policies, the source or sources of funding, the administration of the trust, and related matters.
 D. For the purpose of this Section the terms "person" and "employer" shall be defined as provided in R.S. 9:1921 and 1922.
This office has previously recognized the establishment of these Funds in Attorney General Opinion Nos. 84-372 and 92-428. I am enclosing copies of these opinions for your reference and convenience.
Considering the above authorities, it is the opinion of this office that qualifying school boards may pay out of monies appropriated and budgeted therefor, part or all of the costs, charges or contributions necessary for the establishment and administration of Teachers Health and Welfare Funds. We believe the payments are authorized pursuant to Article VII, Section 14(B)(2) and R.S. 17:1224. We turn now to your second question.
As you are aware, the powers and duties of the Legislative Auditor are found at R.S. 24:511, et seq. Section 513 provides, in pertinent part, the following:
 § 513. Powers and duties of legislative auditor; audit reports as public records; assistance and opinions of attorney general; frequency of audits; subpoena power
 (A) (1)(a) Subject to Paragraph (3) of this Subsection, the legislative auditor shall have authority to compile financial statements and to examine, audit, or review the books and accounts of all political subdivisions of the state, collectively referred to as the "auditee" In addition to the authority granted above, the legislative auditor shall have access to and be permitted to examine all papers, books, accounts, records, files, instruments, documents, films, tapes, and any other forms of recordation, including but not limited to computers and recording devises, of all auditees. This access shall not be prohibited by Paragraph (3) of this Subsection.
 * * *
 (3) The financial statements of school boards . . . hereinafter collectively referred to as "local auditee", shall be audited or reviewed by licensed certified public accounts subject to Paragraphs (5) and (6) of this Subsection.
 * * *
 (5)(a) In lieu of examinations of the records and accounts of any office subject to audit or review by the legislative auditor, the legislative auditor may, at his discretion, accept an audit or review report prepared by a licensed certified public accountant, provided that such audit or review is performed in accordance with generally accepted governmental auditing standards and the Louisiana Governmental Audit Guide, which is to be jointly published by the legislative auditor and the Society of Louisiana Certified Public Accountant's Governmental Accounting and Auditing Committee, and further provided that the legislative auditor has approved the engagement letter in accordance with this Section. The Louisiana Governmental Audit Guide is a standard for audits and reviews of auditees within Louisiana and shall be produced by the society and the legislative auditor, with input from the Louisiana School Board Association, and any other interested parties. For the limited purposes of providing the audits and reviews as provided in this Subsection, the certified public accountant shall have the access and assistance privileges afforded the legislative auditor in R.S. 24:513(E) and (H). However, the certified public accountant shall comply with any and all restrictions imposed by law and on documents, data, or information deemed confidential by law and furnished to the certified public accountant during the course of the audit or review.
 * * *
 (6) The legislative auditor shall have the authority to prescribe the terms and conditions of any such audit or review conducted by a licensed certified public accountant and shall be authorized to approve said terms and conditions prior to its commencement and to require the office subject to audit to present said terms and conditions to him for approval. (Emphasis added.)
Accordingly, audits conducted by licensed certified public accountants of school boards must be performed in accordance with generally accepted governmental auditing standards and the Louisiana Governmental Audit Guide (Guide). Section 326.01 of the Guide, revised January, 2000, provides:
 326 Audit Scope and Standards
 .01 The scope of local entity audits must include all funds and account groups and all offices, departments, agencies, or other units of the entity that collect or disburse funds. The audit must cover funds held in a fiduciary capacity, funds held by an employee of the entity in the scope of his public employment, and all other public funds, whether donated, self-generated, et cetera. The audit should encompass, at a minimum, a legal entity. (Emphasis added.)
As can be gleaned from the above, the scope of local entity audits must include funds held in a fiduciary capacity by the local entity. Accordingly, if the funds in question are held in a fiduciary capacity by the school boards in accordance with Section 326.01 of the Guide, then the funds are subject to audit under R.S. 24:513 and the Guide. Conversely, if the funds are not held in a fiduciary capacity pursuant to Section 326.01, they would not be subject to audit under R.S. 24:513. We focus now on the essential characteristics of the Funds.
The nature of the Funds, and the manner in which they are administered are described in a letter dated April 25, 2000, from John J. Weiler, a copy of which is enclosed for your reference. The letter reflects that the three Funds are established pursuant to collective bargaining agreements that were negotiated between the respective school boards and unions. In general, the trust documents provide for either joint administration by a trust board consisting of an equal number of school board appointed and union appointed trustees, or a board consisting of solely union appointed trustees. The trustees act pursuant to written declaration of trusts, independently, as Plan fiduciaries. The trustee's decisions are based sold on what is in the best interest of the Plan Participants, as opposed to what is in the best interest of the unions or school boards.
Participants are members of the respective collective bargaining agreements, but participation is not limited solely to union membership.
Typically, the collective bargaining agreements provide that the school boards are obligated to contribute to the applicable Fund a specified yearly amount for each bargaining unit member. The collective bargaining agreement does not restrict or place conditions upon the use of the amounts contributed. The trustees exercise total and independent discretion as to the utilization of contributions in providing the specified welfare benefits to Plan Participants. The yearly contributions are co-mingled with other monies that the Funds are holding, and benefit programs are paid from the whole.
The most common types of programs available to Plan Participants are prescription drugs, dental, vision and professional development. The Funds provide "supplemental benefits" to their participants which are either not provided by the school boards for all employees, or enhanced benefits from those provided by the school boards.
Once the school board contributions are made to the respective Funds, the trust documents establishing the Funds prohibit the reversion of contributions to the respective school boards. In other words, the contributions no longer belong to the school boards, but rather belongs to one of the respective Funds which are independent entities administered by their own boards of trustees.
Based on the above information, it would appear that the Funds in question are not held in a fiduciary capacity by the respective school boards as envisioned by Section 326.01. Accordingly, they would not be subject to audit under R.S. 24:513 and/or the Guide.
Trusting this adequately responds to your inquiries, I am
Very truly yours,
 RICHARD P. IEUYOUB Attorney General
 By: _____________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH,3/sfj
OPINION NUMBER 92-428
AUGUST 31, 1993
54 — INSURANCE 19-B — DENTISTRY 103 — SCHOOLS SCHOOLS DISTRICTS — Pension Benefits, Teachers Retirement System R.S. 22:1510(2), R.S. 22:1510(3), R.S. 22:1510(5), R.S. 22:1511
Since there is no contractual relationship between the fund and the dental care providers, the fund is not a "Dental Care Provider" pursuant to R.S. 22:1510 and therefore not required to obtain a certificate of authority.
Ms. Jeanne T. Cresson MARIE HEALEY ASSOCIATES 336 Lafayette St., Suite 300 New Orleans, LA 70130
 Re: Jefferson Federation of Teachers Health Welfare Fund — Opinion Request Regarding R.S. 22:1510
Dear Ms. Cresson:
Pursuant to your request I have researched the following issue:
 Is the Jefferson Federation of Teachers Health and Welfare Fund ("Fund") required to obtain a certificate of authority as a domestic insurer, pursuant to R.S. 22:1511 as a "dental service contractor"?
Part XXXIII of Title 22 of the Louisiana Revised Statutes regulates "dental service contractors" which are defined at R.S.22:1510(2) as follows:
 Section 1510. Definitions:
 (2) "Dental service contract" means any person who accepts a prepayment from or for the benefit of any other person or group of persons as consideration for providing to such persons or group of persons the opportunity to receive dental services at such times in the future as such services may be appropriate or required, but shall not be construed to include a dentist or professional dental corporation that accepts prepayment on a fee-for-service basis for providing specific dental services to individual patients for whom such services have been prediagnosed. Nothing in paragraph 2 of this Section shall apply to a funded or self-funded trust qualified with the United States Department of Labor in accordance with Public Law 93-406.
Other key terms which are crucial to a resolution of the issue raised above are defined as follows:
 Section 1510. Definitions
 (3) "Participant" means a dentist who has contracted with a dental service contractor to accept from and to look solely to such contractor for payment for any health care services rendered to a subscriber, subject to any co-payment obligations included in the contract of the subscriber with the dental service contractor.
 (5) "Subscriber" means any person by or for whom a dental service contractor is paid a periodic premium as prepayment for dental services to be rendered to him by a participant for dental services to be rendered to him by a participant.
The above definitions contemplate a tri-lateral arrangement between the dental service contractor, the participant and the subscriber. There is a contract between the participant/dentist and the dental service contractor; there is also a contract between the dental service contractor and the subscriber/patient.
Since there is no contractual relationship between the Fund and the dentists who provide dental care to employees who are members of the Fund, the Fund cannot be held to be a "dental service contractor" nor is it subject to any of the provisions of R.S. 22:1510 — 1513. Therefore, it is not required to obtain a certificate of authority as a domestic insurer.
If we may be of further assistance to you, please do not hesitate to call or write.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: STEPHEN M. WHITLOW Staff Attorney
SMW/vji
OPINION NUMBER 84-372
April 18, 1984
Mr. Joe A. Potts, Jr. Chairman, Board of Trustees Jefferson Federation of Teachers' Health and Welfare Fund 2617 Edenborn Avenue, Suite D Metairie, Louisiana 70002
Dear Mr. Potts:
This is to acknowledge your letter requesting an opinion from the Attorney General's office concerning the status of the employees of the Jefferson Federation of Teachers' Health and Welfare Fund. You have asked our opinion in answer to the following questions:
 "1. Are employees of the Jefferson Federation of Teachers Health and Welfare Fund employees of the Jefferson Parish School Board?
 2. If the employees of the Jefferson Federation of Teachers Health and Welfare Fund are not employees of the Jefferson Parish School Board, but employees of the Fund, are they entitled to participate in the Louisiana Teachers Retirement System?"
The Jefferson Federation of Teachers Health and Welfare Fund was created under the authority granted by R.S. 17:1224 which provides:
 "§ 1224. Alternative means of providing for benefits
 In addition to and as an alternative to the authority granted by this Part or by any other provisions of law to provide for employee benefits including but not limited to group insurance benefits or services for medical, dental, hospital and nursing care and other compensation on account of sickness, disability, or death, or any other related benefits, parish or city school boards in parishes or cities having a population of over four hundred fifty thousand may establish a trust for such purposes and may pay, out of monies appropriated and budgeted therefor, part or all of the costs, charges, or contributions necessary for the establishment and administration thereof as may be determined by the provisions of said trust. With the establishment of such a trust the parish or city school board in parishes or cities having a population over four hundred fifty thousand shall be considered a person and/or employer in creating the trust for the benefit of employees. For the purpose of this Section the terms `person' and `employer' shall be defined as provided in R.S. 9:1921
and R.S. 9:1922. The trust shall provide for the actuarial soundness thereof and may provide for the method of determining the eligibility of participants, the schedule of benefits, procedures for making and paying claims, the use of group insurance policies, the source or sources of funding, the administration of the trust, and related matters." (Emphasis added)
Section 1224 authorizes a qualified school board to establish a trust for certain employee benefits and authorizes the school board to pay all or part of the costs, charges or contributions necessary for the establishment and administration of the trust, The school board is considered an employer in creating the trust.
Under the laws governing the Teachers' Retirement System, any employee of the Jefferson Parish School Board who is not a bus driver, school janitor, school custodian or school maintenance employee must be a member of the Teachers' Retirement System as a condition of employment (See R.S. 17:571 (23) and 5911.
This office has not found any provision in the Louisiana law other than as stated in Section 1224 that specifically defines the employment status of the persons employed to administer the trust created by the Jefferson Parish School Board. Therefore, we must look to the person or entity which pays the employees to determine whether they are employees of the school board.
If these employees are paid directly by the school board or if they are paid from funds appropriated and budgeted by the school board for their salaries it is the opinion of this office that they must be considered employees of the Jefferson Parish School Board for retirement system purposes and must be members of the Teachers' Retirement System. If they are not paid directly by the school board or by funds appropriated and budgeted by the school board for their salaries, they would not be considered employees of the school board for retirement system purposes and could not be members of the Teachers' Retirement System.
We hope this letter answers your questions. If you have any further questions, please call us.
Sincerely,
 WILLIAM J. GUSTE, JR. Attorney General
 WILLIAM T. REEVES, JR. Assistant Attorney General
WTRJr:eb cc Dr. Carleton C. Page